MILLER SAW-TRIMMER CO. v. CHESHIRE et al.

CHESHIRE et al. v. MILLER SAW-TRIMMER CO.

(Circuit Court of Appeals, Seventh Circuit. September 12, 1924.)

Nos. 3331, 3332.

1. **Courts** ⬅➡347—Inconsistent defenses may be pleaded.

Under equity rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi), providing that the answer "may state as many defenses in the alternative, regardless of consistency, as the defendant deems essential to his defense," and must state any counterclaim arising out of the transaction, that a counterclaim is for a matter res judicata is not a waiver of a defense of res judicata by the same judgment, pleaded in the answer.

2. **Judgment** ⬅➡564(2)—Failure to assess damages awarded does not render judgment interlocutory.

That the final judgment of a state court awarded damages to defendant on dissolution of a preliminary injunction, to be thereafter assessed, and that no damages were assessed, does not render the judgment interlocutory, or

prevent its being conclusive between the parties of the issues decided.

3. **Judgment** ⬅➡580—Technical defects of judgment pleaded in bar will be ignored.

Though the judgment of the Supreme Court of a state had not been filed, and formal judgment entered thereon in the trial court, as required by the state statutes, at the time it was pleaded in bar of a suit in the federal court between the same parties, nor until after decree therein, the effect of such omission is cured by the subsequent entry of such judgment nunc pro tunc, and the certification of a transcript thereof to the federal court.

4. **Judgment** ⬅➡828(3)—Judgment held conclusive between the parties, in second suit involving new, but identical, matters under the same contract.

The judgment of the Supreme Court of a state *held* conclusive in a subsequent suit between the same parties on the same contract in a federal court, not only as to matters expressly in issue and decided, but also as to identical matters arising later under the contract, involving the same questions as to its construction.

Appeals from the District Court of the United States for the Eastern District of Wisconsin.

Suit in equity by the Miller Saw-Trimmer Company against Edward Cheshire and others. Decree dismissing bill and counterclaim of defendants, and both parties appeal. Affirmed.

Melville Church, of Washington, D. C., and Frank T. Boesel, of Milwaukee, Wis., for plaintiff.

John C. Slade and Geo. L. Wilkinson, both of Chicago, Ill., and Frank M. Hoyt, of Milwaukee, Wis., for defendants.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. Both sides appeal from a decree of the District Court rendered in an action brought by the Miller Saw-Trimmer Company, appellant in the main appeal, to compel performance by appellees of a contract made in 1911 whereby Cheshire, one of appellees, contracted "to sell, transfer and set over unto (appellant's predecessor in interest) the entire right, title and interest in and to such inventions (of Cheshire) as relate to the feeding or handling of paper, which he may hereafter make or acquire during the term of 17 years from date of this instrument, and in and to any applications for letters patent on such inventions, and any letters patent that may be granted on such applications and any reissues or extensions of same."

Cheshire was an inventor in the employ of appellant's predecessor, and as part of the employment was engaged in designing an attachment for a platen printing press of

the Gordon style, whereby such presses, when equipped therewith, would be fed automatically instead of manually as theretofore. The attachment was successfully conceived, and Cheshire applied for a number of patents thereon, all of which applications and patents, up to the time of the said contract, were by the contract specifically assigned to his employer. Quitting this employment Cheshire worked upon a new cylinder press, embodying, among other novel features, certain new concepts in its paper feed, and for such press filed applications for two patents, in which, among other novel features claimed, were some applicable to the paper feed. The Patent Office required division as to certain points, including the part relating to the feed.

Appellant filed its bill in the state circuit court of Wisconsin, setting up the contract, charging that these inventions fall within its purview, and asking that Cheshire and associates, who had become interested with him in these applications, be required to assign them to appellant. Upon the issues there made the Wisconsin circuit court found that the contract was valid, and that these applications came within its terms, but that as to inventions not specifically thereby assigned, the contract was so harsh and unconscionable in its terms that equity would not decree its specific performance, and ordered the bill dismissed. It also dismissed the counterclaim of the defendants to have the contract declared void as to these and future inventions.

On appeal to the Supreme Court of Wisconsin that court adjudged the contract valid and enforceable as to future inventions of the kind therein specified; but that the inventions in issue were not inventions of the kind specified in the contract, but were inventions of a printing press, of which the novel paper feed was an integral and inseparable part, and that the applications in issue did not fall within the terms of the contract. It affirmed the decree dismissing the bill and denied the relief demanded in the cross-action there. Miller Saw-Trimmer Co. v. Cheshire et al., 172 Wis. 278, 178 N. W. 855.

Thereafter four more applications for patents were filed by Cheshire, and these, with the two which were in issue in the state courts, are the subject of appellant's bill in the federal District Court asking the same relief as in the state court, and upon the same state of facts. The District Court found that the adjudication of the Supreme Court of Wisconsin was res adjudicata and binding here, not only with respect to inventions there directly in issue, but also as to the four others, and decreed dismissal of the bill, as well as of the cross-demand of appellees for relief similar to that denied them in the state courts.

It is too plain for controversy that a final decree or judgment respecting a subject-matter in issue between litigants is binding upon them in any jurisdiction where the same issue is raised between the same parties, and surely, as to the two inventions which were specifically in issue in both courts, the judgment or decree of the state court must bind the parties here, unless there is merit in some one or more of the highly technical propositions here urged for appellant.

[1] It is contended that, because appellees in their answer in the District Court asserted the invalidity of the contract respecting future inventions, and asked affirmative relief thereon (as to which propositions the state courts had passed favorably to appellant), appellees thereby waived their pleaded defense of res adjudicata predicated on the Wisconsin judgment. Equity rule 29 requires that every defense presentable by plea in bar or abatement shall be made in the answer, and rule 30 that "the answer may state as many defenses in the alternative regardless of consistency as defendant deems essential to his defense," and must state any counterclaim arising out of the transaction, and may without cross-bill set out any set-off or counterclaim which might be the subject of an independent equity suit. That a counterclaim seeks relief, some or all of which may not be awarded, will not under the rules operate to neutralize or withdraw a stated defense to the action which is well founded.

[2] Appellant further contends there was no final decree of the Wisconsin courts. First, it is urged the judgment of the state court awards defendants their damages on dissolution of a temporary injunction which had been there granted to the plaintiff, to be thereafter assessed, and that without a showing of some disposition of the matter of damages the judgment is interlocutory. Cases are cited where there was involved the question of the finality of decrees finding infringement of patents, awarding injunction decreeing accounting to be thereafter had of profits or damages growing out of the infringement. Without here considering the question of finality of such decree in advance of the determination of the accounting, it is sufficient to say that it bears no

analogy to the case at bar. In suits on patents an accounting for damages or profits is ordinarily a substantial part of the remedy sought, and indeed would not be awarded unless asked for in the bill. Here the damages, if any, assessable on the dissolution of the injunction, are merely incidental, and no part of the cause of action itself, any more than are the costs of the action. They were not accrued at the time the action was begun, and arise, if at all, only because and when it was adjudged in the state court the plaintiff had wrongfully sued out an injunction. There may be no damages, or the party entitled may waive them, or might prefer to begin an independent action against the sureties on the injunction bond, or for any other reason may refuse to press the claim, as seems so far to have been the situation here. The disposition of this incidental matter, not arising under any issue made by the pleadings in the cause, is not essential to the finality of the judgment rendered which disposes of all issues under those pleadings.

[3] Again it is contended there was no final judgment because, when the decree of the District Court in this cause was rendered, the decision of the Wisconsin Supreme Court had not been filed in the circuit court, and that no judgment was formally entered there in accordance with provisions of the Wisconsin Statutes. While as between the parties we might regard the action of the Supreme Court as a final adjudication of the matters there decided, it does appear that on October 20, 1920, shortly after the cause was decided in the Wisconsin Supreme Court, the record of the cause was duly remitted to the clerk of the circuit court, and that on August 9, 1923, the formal judgment was entered in the circuit court nunc pro tunc as of October 20, 1920. It is true this last entry was in fact made after the District Court had entered its decree. On motion then made in the District Court, and while the cause was pending here on appeal, it was there ordered that the certified transcript of this judgment as filed in the District Court be certified to this court. If we were to assume that the decision of the Wisconsin Supreme Court was not such a final judgment between the parties as to be pleadable in another court, as res adjudicata until actually filed in the state circuit court, and judgment there rendered, does not the formal entry of the judgment in the circuit court and the bringing of notice of it to this court while the appeal is here pending require this court to treat the judgment as final and binding between the parties?

A quite similar situation arose in Hart Steel Co. v. Railroad Supply Co., 244 U. S. 294, 37 Sup. Ct. 506, 61 L. Ed. 1372, where during the pendency of an appeal in this circuit a judgment between the same parties, involving the same question, was rendered in the Sixth Circuit Court of Appeals adversely to the conclusion thereafter reached in the Seventh circuit. The Supreme Court held that, on making known to this court the conclusion reached by the court in the Sixth circuit, it became the duty of the court in this circuit to proceed in accordance with such adjudication in the Sixth, and respecting generally the matter of res adjudicata the court said:

"It is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of *public policy* and of *private peace*,' which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way, wherever the judgment is entitled to respect."

By motion to expunge appellant raised here the question of the propriety of permitting the additional record of the judgment entered to be certified to this court; but, since we regard its reception and consideration as part of the record here entirely proper, the motion to expunge is denied.

[4] We are of opinion that the District Court properly adjudged that the findings of the Supreme Court of Wisconsin, as manifested by its opinion and the subsequent judgment, having been in an action between the same parties or their privies and involving matters identical with those here in issue, are res adjudicata as to such matters.

The only question remaining is whether the adjudication of the Supreme Court is applicable as well to the four applications for patents which were not specifically before that court. If they plainly and unquestionably fall within the rule laid down by that court, the adjudication of that court will be equally binding between the parties as to these inventions. To illustrate: If the device before the state court happened to have been painted blue, the conclusiveness here of that judgment would not be different as to a subsequently constructed machine differing only in that it was painted green. So here, if the subsequent in-

ventions unquestionably fall within the same category as those involved in the final judgment of the Wisconsin courts, and there held not to be included within the purview of the contract, the judgment of that court must be likewise held res adjudicata as to these other inventions.

The language of the Wisconsin Supreme Court, construing the contract and adjudging what falls within its terms, is very significant here. On page 301 et seq. (178 N. W. 865) it is said:

"Is Cheshire's new invention (defendant's machine) an invention which relates to the feeding or handling of paper, or is it an automatic cylinder printing press? It cannot be denied that indispensable parts of Cheshire's printing press are mechanisms for feeding sheets of paper from piles of stock and delivering the printed sheets from the cylinder to a receiving pile. It is undisputed that those parts of the Cheshire press which relate to the feeding and handling of paper are incapable of practical use in connection with any other form of printing press or upon any other machine. We, however, do not regard this as controlling, but it is a fact entitled to weight in arriving at a determination as to the nature and character of the invention. The Cheshire press, while it embodies features found in other cylinder presses, contains, as the description shows, many modifications and inventions, and it is admitted that these modifications and inventions are indispensably necessary to its operation. Those parts of the invention which have to do with the feeding and handling of paper are not operative for any purpose unless used in the machine of which they are a constitutent part. Cylinder presses automatically fed were well known to the art long before Cheshire brought out his invention. If Cheshire's new invention be taken apart, and each operation therein be considered by itself, it might well be said that some of the mechanism relates to the feeding and handling of paper; but in determining whether or not the invention as a whole relates to the feeding and handling of paper, as that term was used in the contract, or whether it is an automatically fed cylinder printing press, the invention must be considered as a unit.

"It cannot be considered as a series of correlated inventions some of which relate to one thing and some to another. Cheshire invented a cylinder printing press, automatically fed. The completed operation of the machine is properly described as printing. No unit of the machine feeds or handles paper. In the complete operation of the invention a sheet of paper is taken from one table, passed into the machine and printed, and then deposited upon another table. It does by itself what a hand-fed press does when operated by a pressman; that is, it performs the work of printing. The machine, therefore, is not one for feeding and handling paper, but for printing. Not being an invention for the feeding and handling of paper it is not covered by the amended contract. We are governed in arriving at this determination not by the language used by Cheshire in his application for letters patent, or any other collateral fact or circumstance, but base our conclusion upon the fact that the invention as a whole relates not to the feeding and handling of paper, but to printing.

"We are not here concerned with the question of whether or not the use of some of the elements of this machine constitutes an infringement upon the plaintiff's rights under the letters patent assigned to its predecessors by Cheshire. That is a question that is not within the issues made by the pleadings, and is an entirely different question. The terms of the contract do not embrace a printing machine merely because as a component part of it there are devices within it which, when operating with the machine as a whole, feed and handle paper."

It is very apparent to us that the four inventions represented by the applications which were not specifically before the Wisconsin courts, relate to "printing presses," and not to "paper feed," in precisely the same manner as was found respecting the two inventions upon which that court did pass; and that they must therefore be governed by the same judgment which fixed the rights of the parties in the state court. Being of this mind, the decree of the District Court dismissing the bill meets with our approval. We are likewise in accord with the conclusion reached respecting the counterclaim of Cheshire and his associates, their rights being sufficiently protected under the decree dismissing the bill.

The decree of the District Court is affirmed. Each side shall pay half the costs of this court.